JOHN GRIMES, Appellant, *v.* WILLIAM RUSSELL *et al.*, Respondents.

1. *Equity — Conveyances to hinder and delay creditors — Solvency of grantor, etc.* — In a suit in equity against a father and son to set aside a conveyance made by the former to the latter, the proof showed that at the time of the conveyance, in 1852, and long afterward, the father was in good circumstances and abundantly able to meet all his current liabilities. The testimony of certain witnesses having no personal interest in the matter, and given many years after the occurrence, showed that the father had said that the conveyance was made to defeat the collection of a security debt of fifty dollars, of the existence of which the only proof was his own statement. He testified that he paid the debt before judgment; that at the time of the purchase he had no recollection of its existence. *Held,* that the evidence showed no such fraud as to invalidate the deed.

*Error to Fifth District Court.*

*Vories, Dunn & Orrick*, for appellant.

*Donaldson, Bannister & Hughes*, for respondents.

CURRIER, Judge, delivered the opinion of the court.

This is a proceeding in equity to set aside a deed, and for judgment vesting in the plaintiff the title to lands thereby conveyed. The petition avers that the defendant, William Russell, in April, 1852, purchased forty acres of land situated in Ray county, Missouri; that the purchase money was paid from his own means and resources, but that he caused the title to be vested in his minor son, Elijah B. Russell, the other defendant in this suit, for the purpose of defrauding his creditors. The answer denies the fraud, and sets out the facts which induced the conveyance to the son, as the defendants now claim.

The case presents but a single question for consideration, and that is a question of fact—namely, whether the evidence preserved in the record shows the existence of the fraud alleged in the petition. As this is a chancery proceeding, the duty is devolved upon this court of examining the evidence and determining from it the issue of fact raised by the pleadings.

In 1850 William Russell went to California. Prior to leaving, as the evidence tends to show, he promised his son some suitable reward in case the son, during the father's absence, should remain at home and do well. It appears that Russell, the father, was absent some two years, returning to his home in Missouri in 1852, and bringing with him funds more than sufficient to pay off all debts that had accumulated against him in his absence, and that such liabilities were all promptly met. Soon after his return the forty acres of land were purchased and conveyed to the son, as in fulfillment of the father's previous pledge, as the defendants insist, but with a view to defraud his creditors, as the plaintiff alleges in his petition. The land was subsequently assessed to the son for the purposes of taxation for some seven consecutive years. The testimony abundantly shows that

Russell, the father, was at the time in good credit every way, punctual in the payment of his debts, and possessed of more or less personal property, such as horses, cattle, sheep, hogs, etc. He was also understood to be the owner of real estate. He testifies that soon after the forty acres were purchased in the name of his son, he also purchased one hundred and sixty acres in his own name, and as to this he is not contradicted. He appears, from the testimony, to have remained in good pecuniary credit and standing for the next succeeding ten years, and until difficulties sprung up between him and the present plaintiff in 1862.

Such is the drift of the testimony, and the only evidence in conflict with it is gathered from the statements of William Russell, made many years ago, to the effect, as remembered and testified to by several witnesses, that the title to the forty acre lot was vested in Elijah B. Russell, the minor son, in order to defeat the collection of a security debt of fifty dollars—a debt not shown to have had any existence, except as the facts appear in the testimony of William Russell himself, who testified that, having heard in California that this debt had been paid by the party primarily liable, the subject had passed from his recollection at the time of the purchase; but that he subsequently settled the claim, not being able to show the fact of a prior payment. He further testified that he was not aware of owing a debt to any one at the time of the purchase, nor is there any evidence tending to show that there were then any outstanding liabilities against him whatever, except this fifty dollar claim, or that he subsequently contracted any indebtedness till years later.

The plaintiff's case rests upon the sole ground of a supposed fraudulent intent on the part of William Russell to evade his liability to the creditor holding the fifty dollar claim, which Russell settled without even permitting it to go into judgment. The transaction is of some seventeen years' standing, and the evidence of the alleged fraud rests in the recollection of witnesses as to what William Russell said many years ago about a matter of no personal interest to the witnesses themselves. The liability to a misconception on their part of Russell's meaning, or a mis-recollection of his words, is very great.

28—VOL. XLV.

In my opinion, the evidence is insufficient to warrant the judgment of the Common Pleas Court granting the prayer of the plaintiff's petition. I therefore recommend the affirmance of the judgment of the District Court reversing the judgment of the court below. The other judges concur.