Hepler vs. The State.

## HEPLER vs. THE STATE.

*April 14 — May 31, 1883.*

LICENSE LAWS. *(1) Complaint for violation, where made. (2) Form of sentence. (4) Record of licenses. (5) Burden of proof of non-license.*
INSTRUCTIONS TO JURY. *(3) When failure to give, not error.*

1. Sec. 1553, R. S., as amended by sec. 3, ch. 322, Laws of 1882, does not confer exclusive jurisdiction of an offense against the excise laws upon the justices of the peace in the town where such offense was committed and where the officer making the complaint resides. The complaint may be made to any justice in the county.
2. Upon a conviction for selling liquor without a license a sentence that the defendant pay a fine of $20 and be committed to the county jail until such fine and costs are paid, but not exceeding in all sixty days, is valid under sec. 1550, R. S., as amended by sec. 1, ch. 322, Laws of 1882, and sec. 4633, R. S., as amended by ch. 72, Laws of 1881.
3. A failure to charge the jury cannot be assigned as error where counsel, although informed before the argument that no charge would be given, did not request the giving of any instructions.

4. It is the duty of the town clerk to keep a record of all licenses granted by the town board for the sale of intoxicating liquors.

5. On a trial for selling liquor without a license the burden of proof is upon the prosecution to show, at least by presumptive evidence, that the defendant had no license. The best evidence in such case is the record of licenses. The absence of an entry in such record would be presumptive proof that no fact existed which would have authorized such entry.

ERROR to the Circuit Court for *Columbia* County.

The case is thus stated by Mr. Justice CASSODAY:

"In August, 1882, the plaintiff in error, *Hepler*, was arrested upon the complaint of L. Woodard, the chairman of the board of supervisors of the town of Wyocena, and brought before a justice of the peace in the city of Portage. The complaint stated that said Woodard had good reason to believe, and did believe, that on the 30th day of July, 1882, at the town of Wyocena, said *Hepler* did unlawfully vend and sell to one Seth Wing intoxicating liquors, in quantities of less than one gallon, without first having obtained a license therefor. On being brought before the justice, *Hepler* pleaded not guilty, and demanded a trial by jury, and upon such trial was convicted; and it was thereupon adjudged and determined that he should pay a fine of $20 and costs, and unless the fine and costs be paid forthwith that he be committed to jail until paid, or until he should be discharged by due course of law, but such imprisonment was thereby limited to three months from that date; and the same not being paid, he was thereupon committed accordingly. *Hepler* thereupon appealed to the circuit court and gave the requisite bond. The cause was thereupon tried in the circuit court, and at the close of the testimony and under the direction of the court the jury returned a verdict of guilty; and thereupon the defendant moved for a new trial, which motion was denied. The court thereupon sentenced *Hepler* to pay a fine of $20 and costs, and be com-

mitted to the county jail until such fine and costs were paid, but not exceeding in all sixty days."

*John Brickwell*, for the plaintiff in error, to the point that the judgment of the circuit court was indefinite, uncertain, and contrary to law, cited: *Haney v. State*, 5 Wis., 529; *Taylor v. State*, 35 id.,' 298; *Bonneville v. State*, 53 id., 680; Barbour's Crim. Law, 614.

For the defendant in error there was a brief by *H. H. Curtis*, District Attorney of Columbia county, and oral argument by the *Attorney General*.

CASSODAY, J. 1. It is urged as error that the justice of the peace in Portage had no jurisdiction to try *Hepler* for the offense alleged, upon the complaint of the chairman of the board of supervisors of the town of Wyocena, for selling intoxicating liquors therein without a license, and hence that the circuit court got no jurisdiction. Counsel seems to think that sec. 1553, R. S., as amended by sec. 3, ch. 322, Laws of 1882, confines jurisdiction in such cases, and upon such a complaint, to some justice of the peace in the town where such supervisor resides and such offense was committed. But such we do not understand to be the purpose of the section. It merely makes it the duty of the officials therein named to make complaint as therein designated. The confusion arises from an inadvertent use of the word "therein," instead of the words "of the county." It does not attempt to give justices of the peace in the particular town exclusive jurisdiction, nor take away from other justices of the peace in the county the power and jurisdiction conferred upon them by statute throughout their respective counties. Sec. 4739, R. S. Nor do we think that the duty imposed upon the supervisors of the town to make complaint "to a proper justice of the peace therein," precluded the chairman of the board in question from exercising his rights as a citizen, and making such complaint to some justice of the

peace in the county not residing in such town.  It may pre-clude such supervisor from the right to fees for such serv-ices, but the mere fact of his being a supervisor would not give nor take away jurisdiction.  Here the complaint does not purport to be made by any of the officials named in said sec. 3.  As a matter of fact the complainant was chairman of the board at the time, but the complaint does not disclose such official character.  In fact, the section makes it the duty of every justice of the peace, as well as every supervisor, etc., to make such complaint.  This being so, a case might be presented where no justice of the peace could be found in the town who could properly take jurisdiction.

2. It is urged that the judgment rendered by the circuit court is indefinite, uncertain, and contrary to the law, as de-clared in sec. 1550, R. S., as amended by sec. 1, ch. 322, Laws of 1882, and sec. 4633, R. S., as amended by ch. 72, Laws of 1881.  The contention is that the commitment should have been for a time certain, instead of being until such fine and costs are paid, not exceeding in all sixty days. It is very plain, however, that the commitment was strictly in harmony with the statutes cited.  The prisoner could terminate the imprisonment at any time within the period limited by making payment.  The precise time when he would make the payment, or whether he made it at all, was wholly optional with him.  Being optional with him, it was for him and not the court to make it certain by actual payment.  The time within which he was limited to make the payment did not transcend the time fixed by the statute, and hence he has no cause of complaint on that ground. There is nothing in this view in conflict with any of the cases which are cited by counsel, as they are clearly dis-tinguishable.

3. It is urged as error that the court wholly failed to in-struct the jury as to the law applicable to the case.  But no instructions were requested, notwithstanding counsel were

advised, before arguing the case to the jury, that no charge would be given, and hence there is no ground for complaint on that account.

4. Counsel urge that the burden of proving that the liquor drank was intoxicating, was upon the state, and that the proof adduced was insufficient. That question, however, has just been fully determined by this court in *Briffitt v. State, ante,* p. 39, in which an opinion is filed herewith, and to which there is nothing to be added. Besides, the evidence in this case tended to show that the liquor drank was intoxicating.

5. The chairman of the town board of supervisors, on his direct examination in behalf of the state, was asked: " *Question.* State whether that board has granted any licenses for the sale of intoxicating liquors since that time? Objected to as not the best evidence, being a matter of record. Objection overruled. Defendant excepted. *Answer.* They have not." The time referred to in the question was April 11, 1882. Was this admission of oral testimony to prove want of license error? Mr. Wharton has so recently and carefully collated the authorities upon the subject that reference to them need not be here repeated. He says: "As a general rule, a license to do a particular thing, when a purely extrinsic defense, is to be proved by the defendant by a preponderance of proof. Whether a license is so extrinsic depends upon the concrete case. When the non-existence of the license is not averred in the indictment, and when the license is particularly within the knowledge of the party holding it, the burden is on him to produce such license in all cases in which the existence of the license is in question. On the other hand, when the non-existence of the license is averred in the indictment, and is essential to the case of the prosecution, it is proper, if we follow the rules already announced, to hold that non-license must be proved by the party to whose case such proof is essential." Whart.

Crim. Ev., § 342. "It has been ruled," says the same author, "in some courts, though on questionable reasoning, that it is for the defendant to prove he is licensed, the prosecution not being bound to prove a negative. But wherever the negative is capable of proof, it is one as to which the prosecution should at least make out a *prima facie* case." Whart. Crim. Law, § 1500. To each of these different propositions the learned author cites numerous cases.

Among the cases so cited is *Mehan v. State*, 7 Wis., 670, where it was held that on a trial for selling intoxicating liquors without license the prosecution must produce presumptive evidence, at least, that the defendant had no license, and that the defendant was not bound to prove affirmatively, in the first instance, that he had license. That decision in our own court must be followed, notwithstanding there are cases to the contrary. See, also, 1 Greenl. on Ev., §§ 78–80. Just what kind of proof the state was bound to make, however, does not there appear. As to that, Mr. Wharton says: "But when the prosecution has the burden of proving the negative, full proof is not required, but even vague proof, or such as renders the existence of the negative probable is in some cases sufficient to change the burden to the other party." Whart. Crim. Ev., § 342. Most of this quotation, however, is taken from the opinion of Mr. Justice SHELDON in *Beardstown v. Virginia*, 76 Ill., 44. That case involved the want of qualification in electors, and the language actually used was, "full *and conclusive* proof," etc., "is not required." Quite similar to this is the language of the supreme court of Missouri in *State v. Hirsch*, 45 Mo., 431, and *State v. Richeson*, id., 575.

In *Comm. v. Thurlow*, 24 Pick., 374, Chief Justice SHAW, in a case like the present, said: "The county commissioners have a clerk, and are required by law to keep a record, or memorandum in writing, of their acts, including the granting of licenses. This proof is equally accessible to both parties.

The negative averment can be proved with great facility, and therefore, in conformity to the general rule, the prosecutor ought to produce it before he is entitled to ask a jury to convict the party accused."

In *Comm. v. Kimball*, 7 Met., 304, the prosecution produced a book which it contended was the book in which were recorded all licenses granted by the county commissioners, and also the docket kept by them, but neither contained anything indicating the granting of any license to the accused. The book of general records, however, was not produced, for the reason given that it had not been written up for the period in question. It was held, however, that the docket and minutes of the commissioners, before their records were made up, were competent evidence for the government; and that as no license to the defendant appeared on such docket or minutes, it was *prima facie* evidence that he had not been licensed. Certainly such original entry and minutes were as good as, if not better than, a subsequent transcript of them. *O'Mally v. McGinn*, 53 Wis., 353.

In *Williams v. East India Co.*, 3 East, 192, the defendant company was charged with wrongfully, unlawfully, and unjustly causing to be put on board the plaintiff's ship, while in the service of the defendant, a jar of certain oil and varnish of a combustible and inflammable nature, without giving notice thereof to the chief mate of the ship, or to any other person or persons concerned or employed in the navigation thereof, by reason whereof such combustible material became ignited and set fire to the ship, which, with the cargo, was destroyed, and for which damages were claimed. It was proved on the trial that neither the captain nor second mate had any notice or knowledge of the nature or presence of the combustible material. The chief mate having died, no evidence was given as to what passed between him and the conductor of the military stores of the

company, although it was proved that the chief mate was an officer of skill and discretion, and that the jar would have been in a proper place on the ship had it not been of an inflammable nature. At the close of the testimony Lord Chief Justice ELLENBOROUGH nonsuited the plaintiff on the ground " that the proof of this allegation [want of notice] lay on the plaintiff, and the best evidence of it was still in his power to produce, notwithstanding the death of the chief mate, by calling the company's officer who delivered the article on board, who could best tell whether or not he had given such notice, as no other person appeared to have been privy to what passed between them at the time." On a rule *nisi* for setting aside the nonsuit and a new trial, supported by arguments from Lord ERSKINE and others, the King's Bench sustained the nonsuit in an elaborate opinion by the Lord Chief Justice, holding that the burden of proving that the dangerous article was put on board without notice, rested upon the plaintiff alleging it, and that the plaintiff had failed to furnish the best available evidence of such want of notice. That case is cited with approval in *Fresh v. Gilson*, 16 Pet., 332.

Here the license could only be granted by the supervisors sitting as a town board. Sec. 1548, R. S., as amended by sec. 10, ch. 322, Laws of 1882. The same section provides that such licenses, when granted, shall be attested by the town clerk and not delivered until the applicant produce to him a receipt showing the payment to the treasurer of the sum required, and the filing with the clerk the bond provided for. The statute also makes it the duty of the town clerk " to act as clerk of the town board; to keep and record faithful minutes of their proceedings, and to enter at length every note, order, direction, resolution, or regulation made by the board or by the supervisors in their official capacity, and to file all accounts audited by the board, or allowed at town meeting, and enter a statement thereof in

the book of records." Subd. 7, sec. 832, R. S. Such being the duty of the clerk, we think he was bound to keep a record of all licenses granted by the town board. Having such record, the proof, in the language of Chief Justice Shaw, *supra*, was equally accessible to both parties. The negative averment in the complaint could be proved with great facility, and therefore, in conformity to the general rule, the prosecution ought to have produced such record before asking a jury to convict the accused. The case, therefore, did not come within the first, but clearly did come within the second, class of cases mentioned by Mr. Wharton. The non-license was necessarily averred in the complaint, and hence necessarily to be proved by the state. It is true, the prisoner could readily have established his defense by producing his license, if he had any. But we are to remember that the accused was presumed to be innocent until he should be proved to be guilty, and the burden of making such proof, though in part a negative, was at least *prima facie* upon the state.

It is true, if no application for license was ever made by *Hepler*, then there could be no record in relation to such fact. But a production of the book or memorandum where the entry of such license would have been made, had one been granted, would *prima facie* have disproved the existence of such license. Assuming the absence from the record of any entry respecting such license, yet that did not excuse the state from producing the book or memorandum. Such non-license could only be proved, against objection on the part of the accused, by the best evidence available to the state. The absence of such entry in such record would be presumptive proof that no fact existed which would have authorized the entry. The best evidence, therefore, was, manifestly, the book in which such records, minutes, or entries would have been kept by the clerk.

The allowance of parol evidence, whenever it is claimed

upon the part of the state that there is no such record, minutes, or entries, would, in effect, dispense with record evidence on the part of the state in all cases, for the very theory of every such prosecution is that the accused has no license. If the state can in the first instance, and in the absence of the records, disprove the existence of a license by parol testimony, on the ground that no license was in fact ever granted, then it can certainly make the same proof when one has been granted. If the parol evidence of non-license were false, then, of course, it could easily be dis-proved by the record or the license itself. But to hold it competent to prove non-license by parol, on the ground that it could be disproved by the record if false, would do away entirely with the objection of incompetency, and make the admissibility of the evidence dependent entirely upon the veracity of the witness, instead of the nature of his testi-mony. It would do away entirely with the line which sep-arates the best evidence from that of a lower grade. Such an innovation upon the rules of evidence would strike deeper than the liquor traffic, and go to questions of property, and might work serious mischief. If it is to be made at all, therefore, it should be directly by legislative enactment, as in Massachusetts after the decision in the case against *Thur-low*, *supra*. Certainly it is not the duty of the court to break down established rules of evidence, nor to bend them to the exigency of a particular case. On the contrary it is the recognized duty of courts to be the conservators of the law as it is, in all its integrity.

*By the Court.*— The judgment of the circuit court is re-versed, and the cause is remanded for a new trial. The sheriff of Columbia county will take and hold the prisoner in custody until he gives the requisite bail, or is otherwise discharged according to law.