PEOPLE *v.* WYSOCKI.

1. EVIDENCE—CONSPIRACY—CONFESSION—HOMICIDE.

Confession of one of two codefendants charged with conspiracy to murder made in the presence of the other and promptly, emphatically and unequivocally denied by him is not binding upon him nor admissible in evidence against him.

2. SAME—DECLARATIONS OF CONSPIRATOR.

Declarations of one conspirator are not admissible in evidence against the others where made after the common design is accomplished or abandoned, even if a conspiracy is shown otherwise.

POTTER and BUSHNELL, JJ., dissenting.

3. CRIMINAL LAW—OTHER OFFENSES—HOMICIDE—FAKE HOLD UP.

Reference in opening statement by prosecuting attorney and subsequent proof of fake hold up, *held*, prejudicial error in trial of first-degree murder charge, where hold up was not connected in any way with alleged conspiracy to commit murder nor incidental to any fact or circumstance of the offense charged.

NELSON SHARPE, C. J., and POTTER and BUSHNELL, JJ., dissenting.

Appeal from Recorder's Court of Detroit; Boyne (John A.), J. Submitted January 11, 1934. (Docket No. 121, Calendar No. 37,025.) Decided June 4, 1934.

Alex Wysocki and Ira Sams were convicted of murder in the first degree. Defendant Wysocki appeals. Reversed and new trial granted.

*Edward N. Barnard,* for appellant.

*Patrick H. O'Brien,* Attorney General, *Harry S. Toy,* Prosecuting Attorney, and *Edmund E. Shepherd,* Assistant Prosecuting Attorney, for the people.

NORTH, J. Defendants were jointly tried and convicted of murder in the first degree. This appeal is by defendant Alex Wysocki. The people claim that as the result of a conspiracy between the defendants, and for a consideration of $500 paid by Wysocki to Sams, the latter shot and killed the wife of the former. The motive for the crime was the alleged infatuation of Wysocki for another woman who had been in his employ. In consummating the crime it was arranged that Wysocki would take his wife in an automobile, that Sams in another automobile would overtake and crowd Wysocki to the curb for the apparent purpose of consummating a hold up and incident thereto would shoot Mrs. Wysocki. The killing was carried out on May 28, 1932, substantially as planned. Defendants were arrested in August following. Sams subsequently made two alleged confessions, each of them being practically in accord with the foregoing statement. Later Sams disavowed the confessions; and along with Wysocki entered a plea of not guilty.

Referring to an incident which antedated the murder nearly three months, the assistant prosecuting attorney in his opening statement said:

"We will show you that * * * the defendant Wysocki reported to the police that he had been held up and that, I believe, $1,800 had been taken from him. We will show you that he made a claim upon that to the insurance company and was paid. We will show you that that was not a hold up, but a fake hold up."

Subsequently the prosecution offered testimony in support of the above-quoted statements; and such testimony was received over the objection that it was too remote, not relevant, not connected with the crime charged, prejudicial, and that it tended "to

show an entirely different offense.'' We think this constituted reversible error. Careful consideration of the record reveals nothing which in any tangible way connects the ''fake hold up'' with the crime with which defendants were charged or with the alleged conspiracy between defendants to commit the crime. It is stated in the people's brief:

''Indeed, it would be absurd in this case for the State to contend that evidence of the commission of a larcenous offense on the 5th day of March (1932) would furnish any substantive proof of an intent to commit conjugal homicide on the 28th day of May. Decidedly, that was not the purpose of the testimony. It is one of the exceptions to the general rule that where testimony of the commission of another offense is merely incidental to another and relevant fact, it may be received without prejudice.''

The theory of admissibility just above noted is not here applicable. The alleged ''fake hold up'' was in no way incidental to the murder charged against these defendants, nor was it incidental to any fact or circumstance which was relevant or material to the offense charged. Instead it tended strongly to establish appellant's guilt of obtaining a large sum of money by false pretenses, an entirely separate and independent felony. Act No. 328, Pub. Acts 1931, § 218. The testimony received was prejudicial and necessitates reversal.

Appellant also assigns error upon the admission of Sams' confession as evidence not only of Sams' guilt but also as tending to prove the guilt of Wysocki. The confession or statement of Sams taken on August 25th was made in the presence of Wysocki, the assistant prosecuting attorney and other officers. Both defendants were then under arrest.

Sams' statement was taken in shorthand and later transcribed. It was a detailed recital of the arrangement made by defendants to commit the crime and of its consummation. When this confession was offered in evidence the following occurred:

"*Mr. Ricca:* If the court please, I want the objection to all of the testimony, as it is Sams' and does not apply to Wysocki.

"*The Court:* As I understand it, both were there so that this would apply to both.

"*Mr. Ring:* No, your honor. I think the jury should be excused while we thrash it out.

"*The Court:* I don't think so. There are certain legal features on which we can instruct the jury, or you may prefer a request to charge.

"*Mr. Ring:* There·was an absolute denial on the part of Wysocki, and then the law says it does not apply."

As stated by counsel in the record just above quoted, there was at the time an "absolute denial on the part of Wysocki" in so far as Sams' statement implicated Wysocki. It is true, as urged in the people's brief, that Wysocki at the time made some "false, conflicting and inconsistent assertions;" but he in no way admitted as true Sams' incriminating accusation. He did not acquiesce by silence. Instead he promptly, emphatically and unequivocally denied the statement; and such denial was made by Wysocki at his first opportunity to do so. The record discloses the following:

"*Q.* (by assistant prosecutor) Alex (Wysocki), did you hear the statement that was given to me by Ira Sams?

"*A.* Yes, sir.

"*Q.* And is it true?

"*A.* No, sir."

A little later, as Sams was continuing his statement, he was interrupted by Wysocki who asked: "How can you tell that story?"

Clearly the statement or admission by Sams, although made in Wysocki's presence, under the circumstances above noted was not binding upon or admissible as evidence against the latter. Notwithstanding the trial court was then informed that the statement about to be read to the jury was denied by Wysocki, the ruling of the court admitting it was:

"As I understand it, both were there so that this would apply to both."

This was erroneous and prejudicial to appellant. It was not corrected in the charge of the court to the jury. Because the case must be reversed on other grounds, we need not give consideration to the effect of the failure of appellant's counsel to request a charge covering this phase of the case, nor need we determine whether the giving of such a charge would have corrected the error committed. Likewise there is no occasion for considering the claim made in behalf of the people that appellant's counsel both by statements made to the court and by a request to charge "invited" the error above noted.

The people's case was presented on the theory that there was a conspiracy between the defendants to commit the murder charged. While the record is not altogether clear, it is a fair inference that it was because of such alleged conspiracy that the statement made by Sams was allowed to go to the jury as evidence not only of his guilt but also of the guilt of Wysocki. Clearly a statement of Sams made weeks after the alleged conspiracy was

fully consummated was not admissible against the co-conspirator. The rule of evidence is thus stated:

"Even if a conspiracy is shown *aliunde,* the declarations of one conspirator are not admissible against the others, if made after the common design is accomplished or abandoned." 2 Jones' Commentaries on Evidence (2d Ed.), § 943.

See, also, *Logan* v. *United States,* 144 U. S. 263 (12 Sup. Ct. 617); *Brown* v. *United States,* 150 U. S. 93 (14 Sup. Ct. 37); 3 Encyclopedia of Evidence, p. 430, citing many cases.

The conviction of appellant is set aside and a new trial granted. Defendant remanded to custody of sheriff of Wayne county.

FEAD, WIEST, BUTZEL, and EDWARD M. SHARPE, JJ., concurred with NORTH, J.

POTTER, J. (*dissenting*). Mr. Justice NORTH has stated the facts. He holds the admission by the trial court, against defendant's objection, of evidence of another fake hold up of defendant, when he was riding in the same or a similar vehicle, on the streets of the same city, such hold up being in the nighttime, and staged for the ostensible purpose of robbery, and used, as claimed by the people, as a cloak for the consummation of another felony, and a shield against detection, constituted reversible error. I think such proof was admissible to show concurrence of common features in the two similarly staged hold ups indicative of a common plan to consummate a criminal offense, and escape detection; that it was proof of "like acts" tending to show defendant's intent,—his conscious participation in the commission of the offense charged,—"the defendant's scheme, plan or system in doing the act in question."

3 Comp. Laws 1929, § 17320, provides:

"In any criminal case where the defendant's motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing an act, is material, any like acts or other acts of the defendant which may tend to show his motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing the act, in question, may be proved, whether they are contemporaneous with or prior or subsequent thereto; notwithstanding that such proof may show or tend to show the commission of another or prior or subsequent crime by the defendant."

It is well settled that proof of a separate and distinct offense is not ordinarily admissible in evidence to prove the commission of the offense with which defendant is charged.

"No separate and isolated crime can be given in evidence." Underhill on Criminal Evidence (2d Ed.), § 88.

"The general rule is that evidence shall be confined to the issue, and that on a trial for felony the prosecution will not be permitted to give evidence tending to prove the defendant guilty of another distinct and independent felony." *People* v. *Seaman,* 107 Mich. 348 (61 Am. St. Rep. 326).

Exclusionary rules were, prior to the enactment of the statute above quoted, subject to many exceptions.

"Where it is necessary to show a particular intent in order to establish the offense charged, proof of previous acts of the same kind is admissible for the purpose of proving guilty knowledge or intent, or, where it is claimed that the thing done was the

result of an accident, proof of other like occurrences under like conditions has been held admissible.'' *People* v. *Seaman, supra.*

Facts are admissible in evidence if they are legally relevant, though they may tend to prove the defendant guilty of another separate and distinct offense. *People* v. *Marble,* 38 Mich. 117; *People* v. *Macard,* 109 Mich. 623. If this were not so then if facts legally relevant were involved in prior criminal acts they would be excluded through the crime of defendant.

''A party cannot, by multiplying crimes, diminish the volume of competent testimony against him.'' *State* v. *Adams,* 20 Kan. 311, 319, per Justice Brewer.

Before the enactment of the statute above quoted it was the general rule that evidence of other offenses was admissible if it proved or tended to prove the motive or intent of the defendant or the absence of mistake, or accident, or a common scheme or plan, or the identity of the person committing the offense. Wharton, Criminal Evidence (9th Ed.), § 48; Underhill on Criminal Evidence (2d Ed.) § 88; Abbott's Trial Brief, Criminal Causes, § 598; *People* v. *Molineux,* 168 N. Y. 264 (61 N. E. 286, 62 L. R. A. 193).

Mr. Justice NORTH holds the evidence of another fake hold up planned by defendant to shield him from detection in the commission of another separate and distinct criminal offense was not admissible. Defendant was specifically charged with procuring another to kill his wife under color of a fake hold up and robbery or attempted robbery. The evidence offered, the admissibility of which is in controversy, is of another fake hold up and robbery as a result of which defendant made a claim against

an insurance company and collected unlawfully a large sum of money. One fake hold up was planned as a shield for unlawfully and feloniously procuring money from an insurance company. The other was planned as a shield for the murder of defendant's wife. It is not claimed there was any connection between the two offenses. This is not a condition precedent to the admissibility of the evidence offered and received. The statute above quoted has nothing to do with evidence of other offenses. It has to do with *"like acts or other acts of the defendant"* which may tend to show his motive, intent, the absence of, mistake or accident on his part or the defendant's scheme, plan or system in doing the act in question. Evidence of such like acts or other acts is admissible whether such acts are contemporaneous with, prior to, or subsequent to the commission of the act in question, and they are not, under the statute, to be excluded because they prove or tend to prove defendant was guilty of another separate and distinct offense. The defendant claimed the hold up at which his wife was killed was genuine and the murder of his wife was without his consent, while the people claimed there was an absence of good faith and innocence upon the part of defendant. Proof of the concurrence of common features in the two hold ups was indicative of a common plan, and admissible to negative defendant's innocence in the killing of his wife. This proof was admissible to show such common plan,—bearing upon the probability that a fake hold up having been successfully used by defendant to cover the consummation of another criminal offense, was probably resorted to in the instant case for the same purpose,—to cover with the cloak of seeming innocence the consummation of his wife's murder. The evidence offered

showed, or tended to show, the concurrence of com-
mon features in the consummation of two separate
and distinct criminal offenses,—the utilization by
the defendant of a common plan by way of a fake
hold up, for a common purpose, to divert suspicion
and cover up the consummation of a criminal act,
with a common cloak of innocence under whose pro-
tecting mantle defendant had previously escaped
detection. It showed or tended to show a common
means of consummation, by a common agency—a
fake hold up—a common subterfuge in the consum-
mation of a criminal act. It is not important that
such testimony was not strong. It is sufficient to
make it legally relevant if it tended to prove an
element common to the consummation of both · of-
fenses. *People* v. *Macard, supra.*

The exclusionary rule sought to be invoked, says
Wigmore, has been rebuffed, rebuked, repudiated,
discredited and denounced. Wigmore on Evidence
(2d Ed.), § 216.

As said by Lord Coleridge in *Blake* v. *Albion Life
Assurance Co.,* 14 Cox's Criminal Cases, 246:

"The general rule is that almost everything that
can throw light upon the matter is admitted. In
any but an English court, and to any one but an
English lawyer, the controversy whether this evi-
dence is admissible or not would seem, I imagine,
supremely ridiculous."

The offense charged included the element of de-
fendant's felonious intent. To prove that intent it
was necessary to negative defendant's innocence.
To prove defendant's intent his motive was sought
to be established. To rebut the claim of innocence
and establish his intent, proof of a common plan,
for a common purpose, to accomplish a common

object,—the consummation of a criminal act,—by the utilization of a common means or agency, a fake hold up, was admissible and comes within the terms of the statute which makes admissible, a. like acts, or b. other acts of the defendant tending to show his intent, the absence of mistake or accident on his part or defendant's scheme or plan in doing the act in question.

This testimony was admissible under 3 Comp. Laws 1929, § 17320, which greatly extended the common-law rule hitherto recognized in this State as to the admissibility of other separate and distinct offenses, so as to cover like acts or other acts of defendant tending to show defendant's scheme or plan. The proof shows both offenses committed in pursuance of a like scheme or plan. If this proof was admissible for any purpose it was not rendered inadmissible because it might tend to show the defendant guilty of another separate and distinct offense. *People* v. *Giddings,* 159 Mich. 523 (18 Ann. Cas. 844); *People* v. *Seaman, supra;* 3 Comp. Laws 1929, § 17320. Such proof is never admissible as substantive proof of the act charged for which the respondent is being tried. *People* v. *Thacker,* 108 Mich. 652; *People* v. *Giddings, supra.* But it is admissible under the statute for the purposes mentioned therein.

"The question at last returns, Is the prisoner guilty or not guilty?" *Hopps* v. *People,* 31 Ill. 385 (83 Am. Dec. 231).

A jury has already passed upon the facts. It has determined appellant was guilty of the offense charged against him. This case should not be reversed on this ground unless this testimony was erroneously admitted. I think it was, under the statute, properly admitted.

There is no question but that under the statute, 3 Comp. Laws 1929, § 17298, defendants were properly tried together. Whether joint defendants shall be tried together or separately is a matter of discretion for the trial court not reviewable by this court. *People* v. *Burman,* 154 Mich. 150 (25 L. R. A. [N. S.] 251). Under the criminal code the rules of evidence in civil actions in so far as the same are applicable govern in all criminal and *quasi*-criminal proceedings except as otherwise provided by law. 3 Comp. Laws 1929, § 17315.

The admissions or confession of defendant Sams were introduced in evidence; proof of their identity and authenticity having been made by the stenographer who reported and transcribed his statements. Subsequently, Sams was sworn as a witness in his own behalf and perhaps on behalf of defendant Wysocki. When produced as a witness, he testified he never got any money from Wysocki, never knew him, did not have anything to do with the death of Mrs. Wysocki, did not receive anything from Wysocki to kill Mrs. Wysocki, never had a conversation with him about killing his wife, and did not know him at the time his wife was killed. He then claimed he was forced and coaxed to make the confession which had been introduced. He was cross-examined in relation thereto, the transcript of his confession being used to refresh his recollection and to impeach him. It is claimed the reception of Sams' admissions and confession in evidence, and their use against defendant Wysocki was error. The common-law rule was that where persons jointly indicted were also jointly tried, one of such defendants was not a competent witness for the prosecution against another co-defendant. 16 C. J. p. 691.

"One defendant in a criminal case cannot be a witness for or against another defendant." *Morrissey* v. *People,* 11 Mich. 327.

The same rule was recognized in *People* v. *Annis,* 13 Mich. 511, and *People* v. *Wright,* 38 Mich. 744 (31 Am. Rep. 331).

At common law the defendant in a criminal case not only could not testify but could not make a statement in his own behalf. This continued to be the rule in this State until the passage of Act No. 125, Laws of 1861, which removed the common-law disabilities of witnesses in civil cases and provided that "nothing in this act shall be construed as giving the right to compel a defendant in criminal cases to testify, but any such defendant shall be at liberty to make a statement to the court or jury, and may be cross-examined upon any such statement." But prior to the effective date of Act No. 245, Pub. Acts 1881, persons accused of crime could not be sworn as witnesses in their own behalf. They could only make a statement to the court or jury. *Burden* v. *People,* 26 Mich. 162; *People* v. *Thomas,* 9 Mich. 314; *Durant* v. *People,* 13 Mich. 351; *People* v. *Annis, supra.* The proper practice, prior to the effective date of Act No. 245, Pub. Acts 1881, is laid down in *Gale* v. *People,* 26 Mich. 157, where it is said:

"The statute provides that the defendant in a criminal case 'shall be at liberty to make a statement to the court or jury, and may be cross-examined upon any such statement:' Session Laws 1861, p. 169. In *People* v. *Thomas,* 9 Mich. 321, it was said by Mr. Justice CAMPBELL, that 'a cross-examination on such a statement would not be allowed to go beyond it. It could not properly extend over the entire issue, as it might if he were a general witness, neither could it go into any of the collateral in-

quiries whereby a witness' credit or memory is sometimes tested. And while his constitutional right of declining to answer questions cannot be removed, yet a refusal by a party to answer any fair question not going outside of what he has offered to explain, would have its proper weight with the jury.' ''

Section 100, Act No. 245, Pub. Acts 1881, now constitutes 3 Comp. Laws 1929, § 14218, and provides:

"The parties to any suit or proceeding named in the record  *  *  *  may be witnesses therein in their own behalf or otherwise, in the same manner as other witnesses.  *  *  *  No person shall be disqualified as a witness in any civil or criminal case or proceeding by reason of his interest in the event of the same as a party or otherwise."

The doctrine that the rights of accused persons must be fully protected by the court, of confrontation, that the right to cross-examination was a condition precedent to the introduction of testimony, that the trial court should fully and fairly charge, on its own motion, on the presumption of innocence, burden of proof, proof beyond a reasonable doubt and upon the application of testimony, was of a great importance to a defendant accused of crime, at common law, when his mouth was closed, and those jointly charged with him were not permitted to testify.

"It would prevent the due administration of justice if, because one or more persons are jointly tried, the admissions or acts of any one of them could not be given in evidence against him, because the others, or one of them, were not present. The admission of Samuel should not have been used against Richard, nor the statement of Richard against Samuel. The

court ought to have carefully instructed the jury upon this point, and explained to them the restriction in the use of the testimony so that the confession of one should not have prejudiced the other." *People* v. *Maunausau,* 60 Mich. 15.

"We see no objection to the ruling of the court of common pleas as to the introduction of the evidence of the admissions and statements of Clements, one of the defendants. They were entirely competent as against Clements, and those parts of them alluding to his statements as to what occurred between Ingraham and himself, were competent as affecting his connection with the crime charged. It is only the ordinary case of two persons on trial for an alleged joint offense, and in such cases the confessions may be introduced as against the party making them. If, as in the present case, they allude to the other party also, all that can be required of the court is distinctly to instruct the jury to apply such evidence solely to the party making such statements and not to allow them to affect the other defendants." *Commonwealth* v. *Ingraham,* 7 Gray (73 Mass.), 46.

The rule recognized in the cases above quoted from were but general applications of the rule that it was the duty of the trial court on its own motion to fully and fairly charge as to the law of the case.

"Without any requests from counsel it is the duty of the circuit judge to see to it that the case goes to the jury in a clear and intelligent manner, so that they may have a clear and correct understanding of what it is they are to decide, and he should state to them fully the law applicable to the facts. Especially is this his duty in a criminal case." *People* v. *Murray,* 72 Mich. 10.

After the enactment of Act No. 245, Pub. Acts 1881, making parties in criminal cases competent

witnesses, there is no doubt but the testimony of
Sams' admissions and confession was admissible.
This is clearly pointed out by the cases above quoted
from, nor is there any doubt but that except for the
enactment of Act No. 175, Pub. Acts 1927, chap. 8,
§ 29 (3 Comp. Laws 1929, § 17322), it would have
been the duty of the trial court to have instructed
the jury as to the limitations upon the use of Sams'
admissions and confession.

There is a generally recognized difference between
admissions and confessions. Wharton on Criminal
Evidence (10th Ed.), § 678a. A confession is an
acknowledgment of guilt; an admission is in the
nature of a concession of the existence of a partic-
ular fact. It is an incidental fact and of no weight
unless it affords a basis for an induction of guilt.
Wharton on Criminal Evidence (10th Ed.), § 628.

In this State the administration of criminal law
has changed. It was found trial judges did not
always fully instruct juries as to the application of
particular testimony, and the feeling was prevalent
that convicted criminals sometimes escaped because
of the inadvertent failure of trial judges to charge
on their own motion fully upon the application of
particular testimony, even though not requested so
to do; and commissioners prepared a code of crim-
inal procedure which became the law of this State.
In preparing that code the commissioners were no
doubt familiar with the law, not only in this State,
but elsewhere, and by the enactment of the statute
the legislature no doubt intended to do what it
clearly did do, change the hitherto settled criminal
procedure in this State. With the relaxation of the
common-law rule prohibiting a defendant or those
jointly indicted from testifying, it was logical there
should be a relaxation in the strict administrative

duty of the trial court to charge on the application of admissible testimony.

In Mississippi, a trial court is prohibited by statute from giving instructions in a criminal case except upon request therefor. *Akroyd* v. *State,* 107 Miss. 51 (64 South. 936); *Pringle* v. *State,* 108 Miss. 802 (67 South. 455). In Arizona, Ohio, Washington and Wisconsin, a trial court is not bound to give instructions unless requested so to do, though these States have not gone quite so far as has Mississippi. *United States* v. *Chung Sing,* 4 Ariz. 217 (36 Pac. 205); *Jones* v. *State,* 20 Ohio, 34; *State* v. *Ross,* 85 Wash. 218 (147 Pac. 1149); *Hepler* v. *State,* 58 Wis. 46 (16 N. W. 42). Michigan was among the States where it was felt a person accused of crime had better opportunities to escape punishment on technicalities under the rule adopted in *People* v. *Maunausau, supra,* and *People* v. *Murray, supra,* than in the States above mentioned; and by Act No. 175, Pub. Acts 1927 (3 Comp. Laws 1929, § 17322), it was provided:

"The failure of the court to instruct on any point of law shall not be ground for setting aside the verdict of the jury unless such instruction is requested by the accused."

The trial court failed to instruct as to the application of the testimony of the defendant Sams' admissions and confession. No request for such an instruction was made by defendant Wysocki and the failure of the trial judge on his own motion to so instruct "shall not be ground for setting aside the verdict of the jury." To hold otherwise is to nullify a remedial statute. The failure of the trial court to instruct on its own motion as to the application of this testimony does not constitute reversible error.

In the language of the statute, it "shall not be ground for setting aside the verdict of the jury."

Judgment of conviction should be affirmed.

BUSHNELL, J., concurred with POTTER, J.

NELSON SHARPE, C. J. (*dissenting in part, concurring in part*). I am in agreement with Mr. Justice POTTER in holding that reversible error was not committed in the reception of the evidence of the "fake hold up" staged by the defendant Wysocki.

I concur in reversal for the reason that the court was in error in stating to the jury that the confession or admission of the defendant Sams "would apply to both" if both of the defendants were present.