**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Frank RAGANO, Defendant-Appellant.**

**No. 72-2594.**

United States Court of Appeals,
Fifth Circuit.

April 9, 1973.

Michael L. Kinney, St. Petersburg,
Fla., John R. Parkhill, Edward M. Wall-

er, Jr., Tampa, Fla., for defendant-appellant.

John L. Briggs, U. S. Atty., Jacksonville, Fla., Claude H. Tison, Jr., Asst. U. S. Atty., Tampa, Fla., for plaintiff-appellee.

Before BELL and THORNBERRY, Circuit Judges, and GROOMS, District Judge.

GROOMS, District Judge:

The appellant was convicted on Count III, of a three count indictment, of a violation of 26 U.S.C.A. § 7206(1).[1]

Count III related to appellant's 1968 return and charged that on June 16, 1969, appellant knowingly made a false declaration in his claim to have sold 20 shares of Two Seasons, Inc. stock for $230,022.20 that he had purchased for $50,000.00, and that the income of $180,022.20 was properly treated as a long term capital gain.

In late 1964 and early 1965 appellant assisted S. A. Rizzo in obtaining a $5,000,000.00 loan from the Pension Fund of the Teamster's Union. The loan was to be used to buy and develop 700 acres of land just north of Miami, Florida. The land which had an appraisal value of $9,500,000.00 was purchased for $3,500,000.00. Two Seasons, Inc. was organized by Rizzo for the purpose of acquiring, holding and developing the land. The property purchased, together with the balance of the loan proceeds, was transferred by Rizzo to the corporation.

On January 3, 1967, a certificate representing 20 shares of Rizzo's stock in Two Seasons, Inc., a 40% interest, was transferred to appellant, who on the same date executed a non-interest bearing demand note to Rizzo in the amount of $50,000.00.[2] On March 24, 1967, appellant's stock certificate was cancelled, and reissued to Rizzo, ostensibly for use by Rizzo as collateral. On November 6, 1967, the shares were reissued to appellant, who claimed that during the interim the stock was in effect held in trust for him by Rizzo.

On January 12, 1968, appellant transferred his stock to Rizzo in consideration of the cancellation of the $50,000.00 note of January 3, 1967, and Rizzo's assumption of appellant's indebtedness to the County National Bank of North Miami Beach in the amount of $68,364.08, to the Central Bank of Tampa in the amount of $51,108.12, and to Two Seasons, Inc. in the amount of $60,550.00, a total of $230,022.20.

Beginning in 1965 and over a period of approximately three years Two Seasons paid fees and expenses and made loans to or on behalf of appellant of $252,332.09. However, no amount was paid on the principal sum of $50,000.00.

The Government's basic charge stems from its claim that the real consideration for the issuance of the twenty shares of Two Seasons stock was not a $50,000.00 debt evidenced by the note but fees earned by appellant in procuring the loan from the Pension Fund.

1. "Any person who—

(1) *Declaration under penalties of perjury.*—Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter;

. . . . .

shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $5,000, or imprisoned not more than 3 years, or both, together with the costs of prosecution."

2. Much evidence was taken as to another note of July 16, 1965, executed by appellant to Rizzo in the amount of $50,000.00. Appellant claims that that note evidenced the purchase price of the 20 shares of stock, but that he was unable to borrow money to pay off the note and that Rizzo would not issue the stock; that he was informed that the note had been lost; that Rizzo wished a new note; that he agreed to give a new note if the stock was issued to him; and that the January 3, 1967, note was executed and the stock issued pursuant to that understanding.

█ A careful review of the evidence covering more than eleven hundred pages of the transcript, leads us to the definite conclusion that the sufficiency of the evidence as to appellant's guilt was for the jury under the guiding principles so frequently announced. Glasser v. United States, 315 U.S. 60, 80,[3] 62 S.Ct. 457, 469, 86 L.Ed. 680; Gordon v. United States, 438 F.2d 858, 867[4] (5th Cir.).

█ In reaching this conclusion we could not overlook appellant's testimony at a hearing in June 1968, before the Shevin Committee of the Florida legislature in the course of its investigation into organized crime, in which he testified that the Two Seasons stock was a part of his fee—"a combination of attorney's fees and I am in hope of finder's fees." Nor appellant's deposition of October 7, 1968, taken in connection with a libel suit that he filed against Time, Inc., wherein he deposed that he had achieved ownership of the stock, "partially for legal services and partially as a finder's fee." Nor his second deposition on December 26, 1968, in the same case wherein he again deposed to substantially the same statement; nor his testimony in this case as follows:

"[B]ut the ultimate result was that I gave him $50,000 note for the stock, and that's how I was able to acquire the stock, regardless of how I labeled it.

Q. Regardless of how you labeled it, sir?

A. That's right. If you recall. Mr. Dempsey, I said this time and time again, it is a combination of finder's fee and legal fees. I left that up to my accountant. I left it up to the IRS Agent. But when you come down to it, whether after all that is said and done, I never would have gotten the stock without the $50,000 note."

This answer appears to sum up appellant's construction of the consideration for the stock as well as his qualifications of prior statements.

Likewise, on the issue of wilfulness and intent we have not overlooked appellant's evidence that he laid the whole transaction before the agents preceding the filing of his 1968 return and that he cooperated with them in supplying whatever information that he had in his possession. The fact that appellant bared his breast to the investigating agents and extended his cooperation would not exempt him from prosecution and the penalties of the law, if he, nevertheless, proceeded to do what the law proscribed.

█ Counts I and II of the indictment were grounded upon appellant's alleged failure to report the receipt of the value of the stock as income for 1967, and in making a false statement as to same, respectively. The jury found appellant not guilty on these counts. He contends that there is such repugnancy and inconsistency between the not guilty verdicts on Counts I and II and the guilty verdict on Count III, that Count III cannot stand. Throughout the trial appellant took the position that the stock had no value on the date of its acquisition in January 1967; that its enhancement from zero to the sum for which it was sold in 1968 resulted from the development of the property during that period. Under this theory the jury could well have found that there was no value to report for 1967, or, at least, could have held that there was ample doubt about the value. Other assumptions could be, but will not be, indulged as a basis of the jury's verdict on Counts I and II. The court did not err in deny-

3. "It is not for us to weigh the evidence or to determine the credibility of witnesses. The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it. United States v. Manton, 2 Cir., 107 F.2d 834, 839."

4. "[I]n considering the sufficiency of the evidence we do not determine whether it establishes guilt beyond a reasonable doubt, but only whether the evidence would permit the triers of fact to find the defendants guilty beyond a reasonable doubt."

ing appellant's motion for judgment of acquittal on the ground of inconsistency of verdicts. Dunn v. United States, 284 U.S. 390, 52 S.Ct. 40, 76 L.Ed. 520; United States v. Panzavecchia, 446 F.2d 1293 (5th Cir.).

Appellant insists that there was error to reverse in the action of the court in admitting the testimony of Revenue Agent Greenwald of an alleged admission by appellant as to Rizzo's testimony before the Florida State Beverage Commission to the effect that appellant had earned the stock "as a finder's fee, an attorney's fee." The issue was first presented in the course of the prosecution's opening statement and was represented to the court as being an admission by appellant of Rizzo's testimony. Over objection the court ruled that appellant having responded to the statement, the statement of the agent became "res gestae of admission."

The question was again presented in the course of the direct examination of appellant's accountant, Andretta. The court stated that anything that appellant said in the course of the interview with the agent would constitute "an admission exception to the hearsay rule," and that it was necessary in order to determine the extent of the admission to have not only what appellant said but what was said to appellant. The court further stated that he would instruct the jury that it could not consider the comments made by Rizzo to prove the truth of the assertions of Rizzo, but that the jury could consider the comments in the context of appellant's response.[5]

When Greenwald took the stand, counsel for appellant reminded the court that he had objected to the conversation in the October 1968 conference as to what Rizzo had testified to when the accountant was called. The court replied by instructing the jury as to the consideration to be given to the conversation, the statement of Rizzo, and the response of appellant,[6] following which Greenwald testified that:

"A. I told Mr. Ragano that I was aware of testimony that Rizzo had given to the State Beverage Department, wherein Mr. Rizzo had testified that Ragano had received the stock for services rendered. I asked Mr. Ragano whether that was true, whether they were legal fees. Mr. Ragano replied no, it was not for services rendered in that he had bought the stock for $50,000 note. He said the books of Two Seasons would bear this out.

"Q. Did he indicate if he was aware of Mr. Rizzo's testimony?

"A. He said he was aware of it."

Greenwald also testified with respect to a further conference in May 1969, when Mr. Adair, an agent now deceased, was present:

"A. Mr. Adair pointed out to Mr. Ragano that the statements of Rizzo that the stock had been given to Ragano as a legal fee, and that there was no other consideration.

Ragano said that he did not know why Rizzo had testified this way, but it was not true."

---

5. Counsel for appellant stated that he would object when the time came, in reply to which the court ruled that it was not necessary to object.

6. "THE COURT: Ladies and Gentlemen of the Jury, in telling you what transpired between himself, Mr. Greenwald, and the defendant in the form of conversation, it is anticipated that Mr. Greenwald is going to relate the conversation, and in relating the conversation he will say some things that Mr. S. A. Rizzo told him in the defendant's absence. In

other words, during his conversation with the defendant, he may occasionally say, 'Mr. S. A. Rizzo said such and such to me. and what do you have to say about that,' or words to that effect.

"Now, you may not consider what he relates, the witness relates as having been said by S. A. Rizzo out of the defendant's presence. You may not consider that as going to the truth of the matter of the statement that S. A. Rizzo said, but you may consider the defendant's response to those statements."

Defendant's witness Whyte was cross-examined as to a telephone conversation between him and Greenwald which related to the witness's awareness that Rizzo had testified before the Beverage Commission that the stock had been given to appellant for services rendered.

In his closing argument the prosecutor put the matter flatly as follows:

"[A]nd we know from the evidence that Mr. Rizzo testified that the payments of stock which had been made to Mr. Ragano in January of 1967 were payments to Mr. Ragano for legal fees."

■■■■ Appellant neither tacitly nor expressly admitted the alleged statement by Rizzo. On the contrary he flatly denied the truth of any such statement. Certainly in the face of his denial, appellant's knowledge of Rizzo's testimony can hardly be construed as an admission. Where the witness's total response adds up to a clear-cut denial, even any theory of implied admission is not available. McCormick, Handbook of the Law of Evidence, at 528 (1954 Ed.); Com. v. Twombly, 319 Mass. 464, 66 N.E.2d 362, and People v. Wysocki, 267 Mich. 52, 255 N.W. 160. "A flat denial [is] in no sense an admission." *Twombly, supra.*

■■■■ The confrontation clause of the Sixth Amendment is not violated as long as "the declarant is testifying as a witness and subject to full and effective cross-examination." California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed. 2d 489. But here Rizzo did not testify, and, of course, was not subject to cross-examination. In short the prosecutor succeeded in getting Rizzo's testimony before the jury and in exploiting it in his closing argument without calling Rizzo as a witness. He now seeks to avoid the consequences of his action by a resort to the harmless error rule and the court's instruction that the jury could not consider what Greenwald related as having been said by Rizzo as going to the truth of Rizzo's statement. Successfully getting Rizzo's statement be-

fore the jury was not the result of a passing incident but of a persistent and sustained effort. The court's instruction anticipated an inculpatory response by appellant that did not materialize, and was consequently misdirected.

In the recent case of United States v. Johnson, 5 Cir., 439 F.2d 885 (1971), where hearsay testimony was introduced solely to show that customs agents were on the lookout for defendant, and not to show the truth of what the informer said, and where the court accepted the ruling and instructed the jury accordingly, Judge Rives, speaking for this court, said:

"The government next argues that the statements of the informer at most constituted harmless error under Fed.R.Crim.P. 52(a). Erroneous admission of evidence can often be corrected by appropriate jury instructions. Conner v. United States, 5 Cir. 1963, 322 F.2d 647. But before a constitutional error can be held harmless, the court must believe it harmless beyond a reasonable doubt. Chapman v. California, 1967, 386 U.S. 18, 22–24, 87 S.Ct. 824, 17 L.Ed.2d 705."

In Bruton v. United States, 391 U.S. 123, 137, 88 S.Ct. 1620, 1628, 20 L.Ed.2d 476, the court ruled that it could not "accept limiting instructions as an adequate substitute for petitioner's constitutional right of cross-examination," in the context of a joint trial, where a codefendant implicated petitioner in a written confession, but did not take the stand.

In Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923, where it was held that the trial court was in error in admitting the transcript of the testimony of an absent witness taken on a preliminary hearing when the defendant was without counsel, the court stated:

"There are few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential

and fundamental requirement for the kind of fair trial which is this country's constitutional goal."

In Krulewitch v. United States, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790, involving a hearsay statement by a co-conspirator to the complaining witness some six weeks after transportation in violation of the Mann Act, the court stated:

"It is contended that the statement attributed to the alleged co-conspirator was merely cumulative evidence, that without the statement the case against petitioner was so strong that we should hold the error harmless under 28 U.S.C. (1946 ed.) § 391. In Kotteakos v. United States, 328 U.S. 750 [66 S.Ct. 1239, 90 L.Ed. 1557], we said that error should not be held harmless under the harmless error statute if upon consideration of the record the court is left in grave doubt as to whether the error had substantial influence in bringing about a verdict. . . . We cannot say that the erroneous admission of the hearsay declaration may not have been the weight that tipped the scales against petitioner."

Barton v. United States, 263 F.2d 894 (5th Cir.), was a case involving the admissibility of an unsigned statement of a co-defendant given out of the presence of the defendant, Mitchell, and a motion for a severance. The court in reversing ruled:

"The sole reliance for Mitchell's protection was the court's instruction to the jury, several times repeated, not to treat the statement as evidence against Mitchell. Considering the substance and terms of Barton's statement, we doubt whether it was at all possible to carry out that instruction. To do so certainly would require twelve minds more perfectly disciplined than those of the average human jurors.

\* \* \* \* \* \*

"The Government argues that a separate trial for Mitchell would have made no difference in the outcome, because 'Mitchell was bound hand and foot by the most awesome array of evidence imaginable, quite apart from the confession of Barton.' We cannot, however, substitute ourselves for the jury, whose duty it was to pass upon Mitchell's guilt or innocence."

See also, Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934.

Appellant's "admissions" with respect to the consideration for the stock were not unequivocal but qualified. The jury should have been permitted to consider their weight unburdened by inadmissible hearsay. We conclude there was error and that the evidence of guilt in this case was not so overwhelming as to render the error harmless, as was found by the Supreme Court in Schneble v. Florida, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340, and by this court in Hoover v. Beto, 5 Cir., 467 F.2d 516, under the facts of those cases.

Appellant challenges the action of the court in overruling his motion to strike the answer of witness Brock as to why appellant should have reported the receipt of the stock in his 1967 return. The witness answered: "Because this is the year that he received pay for services rendered in the form of stock."

Though the question and answer related primarily to the 1967 return involved in Count I, the answer went to the key issue involved in Count III—the crux of the Government's charges against appellant in reporting the transaction as a long term capital gain rather than ordinary income.

 The Court is not unmindful of the modern trend to abandon the rule allowing experts to express an opinion upon ultimate issues when the opinion is otherwise admissible.[7] The mere qualifying of a witness as an expert, Paschal v. United States, 306 F.2d 398 (5th Cir.), does not necessarily render his every conclusion immune from challenge. Experts "ought not to [be] asked or allowed to state their conclusions on the

---

7. See proposed New Federal Rules of Evidence, Rule 704 and note thereunder.

whole case." United States v. Spaulding, 293 U.S. 498, 506, 55 S.Ct. 273, 277, 79 L.Ed. 617. "It is generally agreed that testimony of an essentially factual nature should not be predicated on the opinions, inferences and conclusions of others." *Paschal, supra.*

The Sixth Circuit in Kentucky Trust Co. v. Glenn, 6 Cir., 217 F.2d 462, had for consideration the claim that certain trusts had been created in contemplation of death. The question and the answer by the agent of the Internal Revenue Service were as follows:

" 'Upon what facts or circumstances, did you base your determination that the Trust estates were part of Mr. Schmidt's estate?' The answer was: 'Well, my determination was made by the fact that the Will, the Trust instruments and the life insurance policy assignments were all made at practically the same time.' "

The court, in ruling that the trial court erred in overruling the objection, stated:

"The testimony of the government witness as to why he made the determination to the effect that the trusts in question were made in contemplation of death invaded the province of the jury and permitted the witness to express his opinion as to the ultimate fact. The witness should not have been permitted to testify, in effect, why he believed the deceased made the trusts in contemplation of death. The testimony was incompetent and prejudicial."

The court erred in overruling appellant's motion to strike.

The court's instruction on presumption of the knowledge of the law [8]

was not such as to constitute plain error under Rule 52(b), Fed.R.Crim.P. There was no objection to the charge. The first part of the instruction is identical to the charge before the court in Edwards. v. United States, 334 F.2d 360 (5th Cir.), Note 3, and held to be not such plain error as to require a reversal. The last sentence properly submitted to the jury the question of appellant's ignorance of the law as that question related to specific intent. The court's action finds support in Wardlaw v. United States, 5 Cir., 203 F.2d 884, where it was held that whether the defendant acted under a bona fide misconception of income tax law in failing to report income was for the jury on the issue of knowledge and willfulness.

Taking the court's instruction as a whole, we likewise find no error in any failure of the court to define the essential elements comprising the offense charged in Count III.

Appellant claims that he was denied a fair trial because of the cumulative effect of a series of prejudicial and unfair tactics by counsel for the Government. We have carefully considered these claims, and must frankly state that in certain particulars counsel went to the outer limits of legality. However, in those particulars the court was prompt and firm in its efforts to eradicate any resulting prejudice; and in view of such efforts we are reluctant to and will not hold that it did not succeed in doing so.

Although the court's action in overruling the objections to the admission in evidence of the income tax returns of Rizzo and Two Seasons, Inc., was not challenged on this appeal, we, however, in the interest of trial economy deem it

8. "It is not necessary for the prosecution to prove that the defendant knew that a particular act or failure to act is a violation of law. Unless and until outweighed by evidence in the case to the contrary, the presumption is that every person knows what the law forbids, and what the law requires to be done. However, evidence that the accused acted or failed to act because of ignorance of the law, is to be considered by the Jury in determining whether or not the accused acted or failed to act with specific intent, as charged."

proper to direct attention to the decision of the Ninth Circuit in Greenbaum v. United States, 80 F.2d 113, 125, as to the correctness of such action.

The judgment of conviction is reversed and the cause is remanded for a new trial.

Reversed and remanded.

THORNBERRY, Circuit Judge (specially concurring):

I agree that the conviction should be reversed and the case remanded for a new trial because the admission into evidence of Agent Greenwald's report of Rizzo's statement contravened the hearsay rule and the Confrontation Clause of the Sixth Amendment. Rizzo made the statement in question—that Ragano had received the stock as "a finder's fee, and attorney's fee"—under oath before the Florida Beverage Commission in the course of applying for a liquor license. Since Ragano denied the truth of Rizzo's prior-hearing statement when confronted with it, the statement was not an admission and should have been excluded under the hearsay rule. C. McCormick, Evidence, §§ 269, 270 (2d ed.1972). Because Rizzo was not subject to cross-examination by Ragano when he made the statement and did not testify at trial, his statement was likewise inadmissible under the Confrontation Clause. California v. Green, 1970, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489. Further, I agree that despite the district judge's limiting instruction to the jury the constitutional error cannot be said to have been harmless beyond a reasonable doubt in the context of this case. Bruton v. United States, 1968, 391 U.S. 123, 135, 88 S.Ct. 1620, 1628, 20 L. Ed.2d 476; Chapman v. California, 1967, 386 U.S. 18, 87 S.Ct. 824, 17 L. Ed.2d 705.

Since our ruling on the hearsay-confrontation issue is sufficient to dispose of this appeal, I would not reach the other asserted errors.